

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2008

# Ezeanuna v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ezeanuna v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**IMG-059**                                                   **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1542
_____

VINCENT EZEANUNA,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A24-593-045
Immigration Judge: Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2008

Before: MCKEE, NYGAARD and ROTH, Circuit Judges

(Opinion filed May 19, 2008 )
_____

OPINION
_____

PER CURIAM

Petitioner Vincent Ezeanuna, a native and citizen of Nigeria, came to the United

States as a student in 1981 and overstayed his visa.  In October 1986, he was convicted of

misuse of credit cards in violation of Mass. Gen. Laws ch. 266, § 37B.  A prior

Immigration Judge ordered him deported on April 24, 1988. Ezeanuna returned to the United States illegally in 1991, and, in 1993, he married a United States citizen, who filed a relative petition for him. On August 3, 1995, his status was adjusted to that of a lawful permanent resident, but under the false name of "Zeibe Zhekwuma" and the different registration number "A73-483-517."

Removal proceedings were initiated against Ezeanuna in 1997 and 1998 on the basis of this fraud, but were terminated because a prior Immigration Judge determined that proceedings could not go forward until his lawful permanent resident status had been rescinded. On February 12, 1998, shortly after the second removal proceedings were terminated, rescission proceedings were commenced with the issuance of a "Notice of Intent to Rescind Adjustment of Status." Ezeanuna was personally served with the notice and refused to sign it. On December 7, 2000, his lawful permanent resident status was rescinded by the Immigration & Naturalization Service, App. 825-26, the predecessor to the Department of Homeland Security ("DHS").

Removal proceedings again were initiated with service of a Notice to Appear on July 30, 2003, alleging that Ezeanuna was removable under Immigration & Nationality Act ("INA") § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), as an alien who at the time of entry or adjustment of status was: (a) inadmissible under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), on account of having been convicted of a crime of moral turpitude; (b) inadmissible under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), on

2

account of having procured immigration benefits by fraud or by willful misrepresentation of a material fact; and (c) inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who was not in possession of a valid visa or entry document. Through his former counsel, Diane Bowman, Esquire, Ezeanuna admitted the factual allegations in the Notice to Appear and filed a motion to terminate the proceedings, contending that they were barred by the doctrine of res judicata and the two prior removal proceedings. The Immigration Judge denied this motion because neither proceeding involved a decision on the merits, and Ezeanuna then filed an application for cancellation of removal, INA § 240A(b), 8 U.S.C. § 1229b(b). He contended that his removal would be an exceptional and extremely unusual hardship for his elderly parents (who are both lawful permanent residents), and his new wife, Coretta R. Walker, a United States citizen.

During the proceedings, Ms. Bowman informed the Immigration Judge that a visa petition (Form I-130) filed by Coretta Walker on Ezeanuna's behalf was pending with the United States Citizenship & Immigration Services ("USCIS"). Later the IJ was informed that the visa petition had been denied, and he gave Ezeanuna a continuance to allow him to consider his options. Ezeanuna decided to proceed with the application for cancellation of removal. Following a hearing at which he and his mother testified, the IJ denied the application. The IJ found that Ezeanuna had the required good moral character and 10 years of continuous residence, but he had failed to meet his burden of proving

exceptional and extremely unusual hardship to his qualifying relatives. The IJ noted, among other things, the irony of concluding that Ezeanuna's removal would work a hardship on his wife when the District Director had recently determined, in denying the relative petition, that his marriage to Coretta Walker was not bona fide. The IJ granted Ezeanuna's request for voluntary departure, and, in the alternative, ordered him removed to Nigeria.

Ezeanuna appealed to the Board of Immigration Appeals, contending that the application for cancellation of removal had been improperly denied, and the proceedings should have been terminated on the basis of res judicata because of the prior removal proceedings. On July 27, 2006, the Board denied the appeal, holding that the IJ properly denied the motion to terminate. The Board also agreed with the IJ's decision denying cancellation of removal on the ground that Ezeanuna did not demonstrate hardship to his qualifying relatives. But the Board also held that the IJ erred in his good moral character determination, and that the application for cancellation of removal failed on that basis as well. Ezeanuna did not have the required 10 years of good moral character prior to the initiation of removal proceedings in July 2003 insofar as he had lied about his identity from at least 1993 until 1995 in order to obtain lawful permanent resident status. No petition for review was filed from the Board's decision.

Ezeanuna retained new counsel, Michael Okechuku, Esquire, and, on October 31, 2006, filed a motion to reopen on the basis of alleged ineffective assistance from Ms.

Bowman.[1] Ezeanuna contended, App. 60, that he was prejudiced by Ms. Bowman's failure to seek an adjournment of the proceedings in order to allow for the adjudication of his appeal from the denial of the relative petition filed by his wife; he would have been eligible for adjustment of status pursuant to INA § 245(i) upon approval of that visa petition.[2] Ezeanuna submitted a copy of the November 15, 2004 decision by the District Director, denying his wife's visa petition, and he asserted that he had complied with the procedural requirements for raising a claim of ineffective assistance of counsel as set forth in Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). In his Lozada complaint, App. 294-95, he also contended that Ms. Bowman erred by not submitting Coretta Walker's medical records in support of his hardship argument.

On January 26, 2007, the Board denied the motion to reopen as untimely under 8 C.F.R. § 1003.2(c)(2), because it was not filed within 90 days of the prior July 27, 2006

---

[1] Because counsel at a removal hearing may be so ineffective as to impinge upon the fundamental fairness of the hearing in violation of the Fifth Amendment due process clause, a claim of ineffective assistance, if proven, may constitute a proper ground for reopening proceedings. Lu v. Ashcroft, 259 F.3d 127, 131-32 (3d Cir. 2001). See also Ponce-Leiva v. Ashcroft, 331 F.3d 369, 374 (3d Cir. 2003).

[2] An alien who is seeking to take advantage of INA § 245(i) must be the beneficiary of a visa petition filed on his behalf prior to April 30, 2001, and the visa petition must be approvable when filed. INA § 245(i)(1)(B)(i), 8 U.S.C. § 1255(i)(1)(B)(i). Ms. Walker did not file her visa petition by that deadline, but Ezeanuna claimed that he was "grandfathered in" by a relative visa petition filed by his sister on April 30, 2001. Our disposition of the instant petition for review does not require us to address the merits of this "grandfathering in" argument, and we express no view whatever about it.

Board decision, or by Wednesday, October 25, 2006.[3] The perfected motion was not filed until October 31, 2006. The Board went on to "note" that Ezeanuna had in any event failed to show that Ms. Bowman's performance was so inadequate that it may have affected the outcome of the proceedings so as to exempt him from the time bar.[4] The Board concluded that the appeal of a previously denied relative petition is not deemed to be prima facie evidence of entitlement to an immigration benefit such that a continuance should have been granted. The Board also concluded that Ms. Bowman's decision not to submit Coretta Walker's medical records was tactical, and it criticized the motion to reopen for failing to address its prior finding that Ezeanuna lacked 10 years of good moral character prior to service of the 2003 Notice to Appear. Ezeanuna timely petitioned for review.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal. We are not authorized to review the Board's July 27, 2006 decision, because the petition for review is timely, see 8 U.S.C. § 1252(b)(1) (providing for thirty period for filing petition for review), only as to the January 26, 2007 decision. See Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 405-06 (1995) ((holding that, in context of motion for reconsideration or to reopen,

---

[3] The parties agree that the Board's decision misstates the due date as October 27, 2006.

[4] Of course, Ms. Bowman had nothing to do with the late filing of the motion to reopen.

Congress envisioned two separate timely petitions for review of two separate final orders). We review the denial of a motion to reopen under an abuse of discretion standard. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). The Supreme Court has stated that "[m]otions for reopening of immigration proceedings are disfavored," noting that "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Id. We will not disturb the Board's discretionary decision unless it was arbitrary, irrational or contrary to law. See, e.g., Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002).

"An alien may file one motion to reopen proceedings," and such a motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A),(B). Ordinarily, "[t]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Ezeanuna's motion to reopen, even the one that was rejected for failure to pay the filing fees, was late. The original motion to reopen, minus the required fee, was sent via overnight delivery on the due date, October 25, 2006, and received by the Board a day late on October 26, 2006. App. 46. The Board's Clerk's Office rejected the motion on October 27, 2006 for failure either to pay the required fee of $110.00 or submit a Fee Waiver Request form. App. 41-42. The fee was paid on October 31, 2006 and the motion to reopen was docketed, App. 40, 44-45,

7

now six days late.

Because both the defective and corrected motions to reopen were untimely, and none of the exceptions apply,[5] the Board did not abuse its discretion in denying Ezeanuna's motion to reopen. Doherty, 502 U.S. at 323; Sevoian, 290 F.3d at 174. Ezeanuna does not argue to the contrary in his brief and does not cite a regulation that makes the filing deadline other than mandatory. Furthermore, the Board may require the payment of a fee or the submission of the Fee Waiver Form as a technical requirement for perfecting a motion to reopen removal proceedings, unless the motion to reopen is based on an application for relief, such as asylum, that does not require a fee." 8 C.F.R. § 1003.8 (2006). Finally, although attorney conduct can provide a basis for equitable tolling of the ninety-day deadline, see Mahmood v. Gonzales, 427 F.3d 248, 250-53 (3d Cir. 2005), Ezeanuna's former counsel, Ms. Bowman, against whom all of his allegations of ineffective assistance are directed, had nothing to do with the late filing of the motion to reopen.[6] We, therefore, must conclude that the Board did not abuse its discretion in denying the motion to reopen as untimely.

The Board went on to opine that the motion to reopen lacked merit in any event, because, among other things, Ezeanuna was not prejudiced by Ms. Bowman's conduct in

---

[5] There are exceptions to the ninety day deadline which are not applicable here. 8 C.F.R. § 1003.2(c)(3).

[6] And any assertion that current counsel was ineffective for missing the deadline would necessarily have to be made in a second motion to reopen.

failing to seek an adjournment or continuance of the proceedings during the pendency of the appeal from the denial of Coretta Walker's visa petition. Although we will deny Ezeanuna's petition for review on the ground that the Board did not abuse its discretion in denying his motion to reopen as untimely, we express our agreement with the Board's assessment of this prejudice question. See Khan v. U.S. Attorney General, 448 F.3d 226, 236 (3d Cir. 2006) (where alien claims denial of due process caused by substandard representation, he must show that he was prevented from reasonably presenting his case and that substantial prejudice resulted therefrom). An Immigration Judge's discretion to continue a hearing should be favorably exercised where a prima facie approvable visa petition has yet to be approved and a prima facie approvable adjustment of status has been submitted, see Matter of Garcia, 16 I. & N. Dec. 653, 656-57 (BIA 1978), modified on other grounds by In re Arthur, 20 I. & N. Dec. 475 (BIA 1992), but the alien must have a visa immediately available to him, 8 U.S.C. § 1255(a). Ezeanuna did not have an approved visa petition and no visa was immediately available to him because his wife's visa petition had been denied. The Immigration Judge would have retained the discretion to deny any request for a continuance on this basis, see Khan, 448 F.3d at 234-35 (citing Onyeme v. Immigration & Naturalization Serv., 146 F.3d 227, 234 (4th Cir. 1998)).

The fact that an appeal from the denial of the visa petition was pending (and it remains pending, according to the government) would not change this analysis. In evaluating any request for an adjournment or continuance, the IJ could reasonably have

relied on the decision by the District Director denying the relative petition without speculating about whether an appeal of the decision would have arguable merit. Cf. Khan, 448 F.3d at 235 (when all that petitioner offers is speculative possibility that at some future point he may receive labor certification, he has failed to demonstrate that he has a visa petition immediately available to him). Contrary to Ezeanuna's contention, the District Director's decision is not "facially infirm." His appeal presents challenging questions concerning the standard that applies in his case, and the application of the facts of his case to the proper standard.[7]

Last, we note that the Board's conclusion that the motion to reopen also was unpersuasive because Ezeanuna had failed to address its prior conclusion that he lacked good moral character between 1993 and 1995 is not relevant to the issue whether Ms. Bowman prejudiced his case, because she did not prepare the motion to reopen.

For the foregoing reasons, we will deny the petition for review.

---

[7] Ezeanuna has argued that the District Director incorrectly applied the "clear and convincing" standard of proof in judging the *bona fides* of his marriage. The District Director did so on the ground that his marriage took place on May 9, 2003 and thus *after* removal proceedings were first initiated on July 16, 1997. He notes, however, that the July 1997 proceedings were terminated. Because his marriage took place *before* the July 30, 2003 initiation of the instant removal proceedings, the less stringent preponderance of the evidence standard applies. (Appellant's Brief, at 14.) We note, however, that the District Director found ten specific discrepancies during separate interviews with Ezeanuna and his wife that, in her view, more than adequately established that the marriage was entered into for Ezeanuna to obtain permanent residence in the United States. App. 75-76. It is, therefore, not self-evident that the marriage is bona fide under the preponderance of the evidence standard.